**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TEMAN CHOW** and | ) |
| **CHONG WANG CHOW** and | ) |
| **HAU YEE MAK** | ) |
| 631 Macewan Dr NW | ) |
| Calgary, AB, Canada, T3K 3P9 | ) |
| | ) |
| **Plaintiff**, | ) |
| | ) |
| v. | )    Case No.:_____ |
| | ) |
| | ) |
| | ) |
| **WASHINGTON METROPOLITAN AREA** | ) |
| **TRANSIT AUTHORITY (a/k/a "WMATA")** | ) |
| 600 Fifth Street NW | ) |
| Washington, DC 20001 | ) |
| | ) |
| Serve:  Patricia Lee, Esquire | ) |
|          General Counsel's Office | ) |
|          WMATA | ) |
|          600 Fifth Street NW | ) |
|          Washington, DC 20001 | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

COME NOW the Plaintiffs Mr. Teman Chow (hereinafter individually referred to as "Plaintiff") and his parents, Mr. Chong Wang Chow and Ms. Hau Yee Mak (hereinafter collectively referred to as "Plaintiffs"), by and through their attorneys Oliver-Zhang Law, LLC, and bring this cause of action for personal injury against the Defendant, Washington Metropolitan Area Transit Authority ("WMATA"), and as grounds therefore state:

## JURISDICTION AND VENUE

**1.**  Jurisdiction in the Court is founded on the Washington Metropolitan Area Transit

Regional Compact ("WMATRC"), which establishes original jurisdiction in this Court over WMATA matters pursuant to WMATRC Article XVI § 81, codified in District of Columbia law as D.C. Code Ann. § 9-1107.10.

2. Venue in this Court is proper as the negligent acts and/or omissions committed by Defendant occurred in the District of Columbia, and the injuries of the Plaintiff originated in the District of Columbia.

## **PARTIES**

3. At all times relevant, Plaintiffs resided at 631 Macewan Drive NW, Calgary, AB, Canada, T3K 3P9.

4. Plaintiff Teman Chow was born on May 12, 1998.  At the time of the incident on July 17, 2012, Plaintiff was a minor and under a disability, per D.C. Code § 12-302(a)(1).  Plaintiff's disability ended on May 12, 2016, on his eighteenth (18) birthday, and the instant suit is being brought prior to Plaintiff's twenty-first (21) birthday.

5. As the tort claims herein apply exclusively to WMATA, and do not implicate the District of Columbia local government, or any other WMATA Compact signatories, the statutory notice requirements prescribed by D.C. Code § 12-309, for claims filed against the District of Columbia, are not applicable to this case.

6. At all times relevant herein, Defendant WMATA was the owner of the metro subway system being operated by its employees, who were acting within the course and scope of their employment and/or agency with WMATA.

7. Defendant Washington Metropolitan Transit Authority ("WMATA") was created when Congress approved the Washington Metropolitan Transit Authority Compact

("WMATA Compact"), D.C. Code § § 9-1107.01 *et seq.*, which was signed by the District of Columbia, the State of Maryland, and the Commonwealth of Virginia.

8.  Pursuant to the WMATA Compact, Defendant WMATA shall be held liable for its negligent acts and/or omissions, including those of its agents, servants and/or employees, committed in the conduct of any proprietary function.  D.C. Code § 9-1107.01(80).

9.  The provision of mass transportation, including, but not limited to, the provision, operation, inspection, and maintenance of all escalators located within the WMATA subway system, including all escalators within WMATA Metrorail Stations, is a proprietary function, and is ministerial, within the meaning of the WMATA Compact.

10. At all times relevant to this Complaint, WMATA owned and operated the Smithsonian Metrorail Station in Washington, D.C., and WMATA was the owner and operator of the escalators located at said location.

11. Upon information and belief, at all times relevant herein, WMATA was responsible for the operation of the aforementioned escalators located in the Smithsonian Metrorail Station, including, but not limited to, the installation, inspection, cleaning, service, maintenance, repair, and operation of said escalators and all escalator mechanical components within the Smithsonian Metrorail Station, and said escalators entering and exiting the Smithsonian Metrorail Station.

## RELEVANT FACTS

12. On July 17, 2012, Plaintiff, who was fourteen years old at the time, was enjoying a family vacation to America's capital from his home country of Canada.

13. At approximately 8:00 PM on the evening of July 17th, 2012 the Plaintiff and his family had just concluded their evening tour of the National Mall.  As a family, they each boarded WMATA's exterior Escalator #3 (No. DS02N03), at the North Entrance of the Smithsonian Metrorail Station.

14. Suddenly, while descending the escalator, Plaintiff's hard-plastic sandal and foot became entrapped in between the moving escalator stair and the bottom comb plate. He immediately experienced sharp pains in his big toe and throughout his foot.

15. The escalator comb plate referenced above had at least three missing comb teeth and was in disrepair.



*X-Ray imaging of Plaintiff's hand impaled by Defendant WMATA's broken comb plates.*

16. Power to Escalator #3 did not automatically shut off, and it continued to grind and rotate, despite the fact that Plaintiff's sandal, foot, and toes were entrapped between the sharp comb plate and the still-rotating steps.

17. Instinctively, Plaintiff reached down with his left hand, in an attempt to extract his foot from the painful grip of the escalator's still-rotating stairs and its comb plate.

18. Plaintiff instantly experienced excruciating pain, as his entire hand too became entrapped by the still-rotating escalator steps and then immediately impaled by the teeth of the broken comb plate.

19. Although the Plaintiff's sandal, foot, and then his hand were jammed inside the

moving escalator, the escalator remained at full power.  No automatic safety shut-off mechanism engaged.  The escalator continued to rotate around the bloody comb plate that had impaled Plaintiff's hand, as if caught inside a meat-grinder.

20. As parents, the Plaintiffs were horrified while they saw their son's hand become mangled by Defendant WMATA's Escalator #3, and frantically tried to stop the running escalator.  Plaintiff's father tried to activate the emergency stop button, but the escalator did not stop.

21. Various WMATA patrons witnessed the aforementioned event, and attempted to alert the WMATA station manager of the situation, while others began to place 911 calls to DC Emergency Medical Services.

22. With the escalator continuing to grind, the WMATA station manager arrived at Escalator #3 and finally caused the escalator to stop by pushing the emergency stop button.

23. DC Emergency Medical Services arrived at Smithsonian Metrorail Station at approximately 8:20pm.  It became clear that, due to the extent of Plaintiff's injury, EMS would be unable to extract him from the comb plate with metal tines that impaled his hand.

24. For more than thirty minutes, EMS worked to manually remove the comb plates that had skewered Plaintiff's hand from Escalator #3.

25. At approximately 8:53pm, after nearly one hour of being entrapped by Defendant WMATA's escalator, EMS was able to free Plaintiff from the escalator, but only by physically removing the bloody comb plate along with his impaled, pulped hand. Plaintiff, along with WMATA's bloody comb plate, were then transported to

National Children's Hospital.   The medical professionals termed this a "de-gloving" incident.

26. It was immediately apparent that Plaintiff had sustained severe injury to his foot, and multiple severe and permanent injuries to his left hand.

27. As a direct and proximate result of Defendant WMATA's failure to ensure the safety of the escalator, Plaintiff suffered bodily injuries at the age of fourteen.   These injuries have caused, and will continue to cause, severe physical and emotional pain and suffering for the rest of his life.  The Plaintiff has incurred and will continue to incur medical, therapeutic, rehabilitative, and various other related expenses. Plaintiff has sustained additional damages including, but not limited to, the inability to enjoy the normal functions and activities of life.

28. All of the above-described injuries and damages were directly and proximately caused by the conduct, or the lack thereof, of Defendant WMATA as alleged in this Complaint.

29. Prior to the incident referred to in this Complaint, WMATA was put on actual and constructive notice of its system-wide non-compliance with conducting necessary safety inspections and maintenance on WMATA escalators.  For instance, the Tri-State Oversight Committee Report to WMATA, dated October 8, 2010, found that WMATA's escalator preventative maintenance compliance for April 2010 was only 56.1%.  Less than one week later, WMATA publically announced its awareness of "a lack of adherence to maintenance standards" for its escalators.

30. Furthermore, the Tri-State Oversight Committee's Audit Report to WMATA, dated November 28, 2012, revealed that WMATA's Office of Elevators and Escalators

(ELES) did not provide routine refresher courses to train existing WMATA ELES inspection and/or maintenance employees on updated procedures or updated/new equipment utilized on WMATA escalators.

31. Defendant WMATA has repeatedly acknowledged that escalator availability is a "key component" of customer satisfaction with Metrorail service. Significantly, in WMATA's August 2012 Vital Signs Report, WMATA asserts that, between April 2011 and June 2012, escalator "repairs [were] completed 60% faster" and that escalator "maintenance hours [were] down 72%."

32. However, the Office of Inspector General's (OIG) Final Performance Evaluation Report to Defendant WMATA regarding its Escalator Rehabilitation, Replacement and Maintenance Program, dated December 23, 2014, revealed that the escalators at WMATA's Smithsonian Metrorail Station in the year 2012 had 1,197.18 scheduled out of service hours, but 13,393.31 *unscheduled* out of service hours. The OIG report states that this large number of unscheduled out of service hours in 2012 were due to the Smithsonian escalators "requiring major repairs and *reinspections*," (emphasis added) revealing that WMATA was inadequately inspecting and maintaining Smithsonian Metrorail Station escalators prior to, during, and after Plaintiff was injured on July 17, 2012.

33. Additionally, in WMATA's August 2012 Vital Signs Report, WMATA admitted that its customer injury rate between April 2011 and June 2012 had increased. Furthermore, WMATA reported that in June 2012 alone, one month prior to the date of Plaintiff T.C.'s injury, there were 17 escalator-related injuries in the WMATA Metro System.

**34.** Upon information and belief, Defendant WMATA knowingly failed to conduct such proper inspections and maintenance of Escalator #3 at its Smithsonian Metrorail Station, as a result of, inter alia, WMATA's system-wide goal of increasing escalator availability by decreasing scheduled escalator repair hours. This was done at the expense of public safety, causing severe and permanent injuries to WMATA patrons, such as Plaintiffs.

**35.** Upon information and belief, WMATA escalators, including Escalator #3 at the Smithsonian Metrorail Station, are equipped with a rider safety system, consisting of, but not limited to, a comb-step impact device, step level device, and emergency stop button. A comb-step impact device is an escalator safety device which actuates a removal of all power to the escalator, in the event that a foreign object (such as a sandal) becomes entrapped between the comb plate and the rotating steps. A step level device will cause the escalator to stop if a step drops $1/8^{th}$ of an inch at the riser end of the step. An emergency stop button is a red button located at each end of an escalator, that will cause the escalator to stop when pushed.

**36.** Upon information and belief, the comb-step impact device on Escalator #3 should have instantly initiated an automatic shut off of the escalator when the Plaintiff's sandal became entrapped between the escalator comb plate and the steps, so that the steps would stop rotating through the comb plate. The Plaintiff's sandal alone was more than $1/8^{th}$ of an inch thick.

**37.** Moreover, upon information and belief, in the six months prior to Plaintiff's injury WMATA inspectors found multiple issues related to the comb-step impact device of Escalator #3 at the Smithsonian Metrorail Station. For instance, between January

2012 and the end of March 2012, repair work was repeatedly requested for the step impact, comb, and step index of Escalator #3.  On May 3, 2012, and again on June 18, 2012, the Department of Consumer and Regulatory Affairs conducted re-inspections of Escalator #3 and the unit failed inspection on both these occasions, with thirty-five (35) separate, identified violations.  In particular, the top left upthrust track was documented as damaged during the May 2012 inspection, and again failed inspection in June 2012, which is a required safety device that will cause the escalator to stop if a step is about to enter the lower comb higher than normal.

38. Despite such requested repair and maintenance work prior to Plaintiff's injury, and upon information and belief, on July 18, 2012, only one day following Plaintiff's injury, WMATA inspected Escalator #3 at the Smithsonian Metrorail Station, and documented that the comb plate, steps, and up-thrust safety devices were inspected as "Not Good".  At that time, inspectors commented that the broken comb plate should be replaced.  Furthermore, the inspector questioned, "why the step entering the comb plate sits almost a ¼ of an inch lower than the following steps.  Correct any problems found. . . . verify step run-in functions correctly, Station manager stated he had to push the E-stop button at the bottom of the escalator."

39. Upon information and belief, two days following Plaintiff's injury, WMATA conducted another inspection of Escalator #3 at the Smithsonian Metrorail Station, on July 19, 2012.  In this inspection, WMATA did not test the comb-step impact device that failed to activate on the day Plaintiff was injured.  Yet, WMATA found sufficient basis to order a repair of the comb, the comb plate, and the step run-in switch.  Ordering these particular repairs of crucial escalator safety devices, without

any inspection, demonstrates that WMATA had former notice that it knew or should have known that these escalator safety devices were defective.

40. Moreover, upon information and belief, WMATA was responsible for the installation, inspection, maintenance, and repair of all escalator safety devices, including the comb-step impact device at Escalator #3 at the Smithsonian Metrorail Station, pursuant to the requirements of Title 12, Chapter 30A – Elevators and Conveying Systems, of the District of Columbia Municipal Regulations (2008), which directs WMATA to maintain and operate its escalators per The American Society of Mechanical Engineers (ASME) Safety Code for Elevators and Escalators, ASME A17.1.

41. Defendant WMATA was on actual and constructive notice regarding the threat of malfunctioning escalators to WMATA patrons, such as Plaintiffs. However, it failed to adequately warn of the known dangers of the escalators.

42. Upon information and belief, Defendant WMATA knowingly failed to ensure its escalator rider safety system was functional at the Smithsonian Metrorail Station, in ways including, but not limited to, disabling the automatic shutoff, permitting the automatic shutoff to become inactive, and knowingly turning off or recalibrating the comb-step impact device trip criteria so that it was calibrated to a foot-pressure that was too high and would prevent the switch from being sensitive enough to activate in emergency situations.

## COUNT I
### (Negligence & Negligence *Per Se*)

43. Plaintiff incorporates, by reference, all prior paragraphs, as if the same were repeated herein.

44. Plaintiff further alleges that at all times relevant herein, WMATA owned, controlled, operated, managed, constructed, maintained, repaired, designed, evaluated, built, oversaw, patrolled, and supervised the property described as Smithsonian Metrorail Station, located at, and around, 1201 Jefferson Drive SW and 1200 Independence Avenue SW, Washington D.C. 20024, including all escalators located on said property.

45. Plaintiff further alleges that on July 17, 2012, and prior thereto, Defendant WMATA was responsible for inspecting, maintaining, and ensuring the safe use and proper condition of the railroad operations and property, including all vertical transportation equipment, such as WMATA elevators and escalator. Furthermore, WMATA was also responsible for properly and safely managing, overseeing, and coordinating the travel of WMATA patrons entering onto and alighting from said property.

46. At all times mentioned herein, Defendant WMATA, as a common carrier, owed a duty of reasonable care to its passengers.

47. Plaintiff further alleges that Defendant WMATA breached this duty in some or all of the following ways:

    a. By failing to properly inspect and maintain Escalator #3, and all safety devices contained at the Smithsonian Metrorail Station;

    b. By failing to properly inspect and maintain the escalator rider safety system, including, but not limited to, the comb teeth, the comb-step impact device, the emergency stop button, and the step level device on Escalator #3 at the Smithsonian Metrorail Station;

  **c.** By failing to properly train its agents, servants, and/or employees in the proper escalator inspection and maintenance skills, methods and/or procedures;

  **d.** By otherwise negligently, carelessly, and wrongfully failing to take reasonable precautions to protect its patrons from serious injury when entering and alighting from an escalator at Smithsonian Metrorail Station.

**48.** Plaintiff further alleges that Defendant WMATA violated escalator rider safety regulations which were in full force and effect in the District of Columbia at the time of the incident in question.

**49.** By violating applicable District of Columbia safety regulations, including those regulations designed to protect escalator passengers from the acts or omissions of individuals charged with ensuring the safe and proper functioning of escalators, Defendant WMATA was negligent *per se*.

**50.** In particular, Plaintiff alleges that Defendant WMATA was negligent *per se* in violating various provisions of Title 12, Chapter 30A – Elevators and Conveying Systems, of the District of Columbia Municipal Regulations (2008), which directs WMATA to maintain and operate its escalators per The American Society of Mechanical Engineers (ASME) Safety Code for Elevators and Escalators, ASME A17.1.

**51.** As a direct and proximate result of Defendant WMATA's negligence, Plaintiff's foot and hand were severely injured by WMATA's escalator comb plate, as they became entrapped by a comb plate with multiple broken teeth that did not mesh with the steps as required by code, leaving a dangerous, snaring gap, and the non-

activation of the escalator rider safety system, including, but not limited to, the comb-step impact device, step level device, and emergency stop button.

52. As a further direct and proximate result of Defendant WMATA's negligence described above, Plaintiff suffered multiple severe, painful, and permanent injuries, including, but not limited to, the permanent disfigurement and disability to his left hand, as well as experiences of extreme helplessness, fright, anxiety, and anguish, both physically and emotionally.

53. Plaintiff further alleges that as a direct and proximate result of the negligence of Defendant WMATA, Plaintiff has incurred, and will continue to incur, substantial expenses for medical care; has incurred and/or will continue to incur a loss of wages and wage-earning capacity; and has suffered and will continue to suffer severe physical pain and mental anguish.

## COUNT II
### (Negligent Maintenance & Inspection)

54. Plaintiff incorporates, by reference, all prior paragraphs, as if the same were repeated herein.

55. Plaintiff further alleges that on July 17, 2012, and prior thereto, Defendant WMATA was responsible for maintaining and ensuring the safe use and proper condition of the railroad operations and property, including all vertical transportation equipment, such as WMATA elevators and escalator, and for properly and safely managing, overseeing, and coordinating the travel of passengers entering onto and alighting from said property.

56. Prior to July 17, 2012, WMATA was put on notice repeatedly and consistently that the escalators within the WMATA Metrorail System, and particularly the escalators

at the Smithsonian Metrorail Station, required frequent inspection and maintenance for its safe operation.

57. Prior to July 17, 2012, WMATA had knowledge that failure to properly inspect, maintain, clean, repair, and adjust the escalators at the Smithsonian Metrorail Station, including, but not limited to, replacing comb plates with multiple missing teeth and ensuring said comb teeth meshed with escalator steps, would directly impact the health and safety of its patrons, in ways such as, but not limited to, a patron's sandal becoming entrapped under an unmaintained comb plate when alighting the escalator, due to a gap caused by comb teeth that were broken and that did not mesh with the escalator steps.

58. Prior to July 17, 2012, WMATA consciously and deliberately failed to maintain, clean, repair, inspect, and adjust the escalators at the Smithsonian Metrorail station, particularly the escalator that is the subject of this Complaint.

59. WMATA had a duty to inspect, clean, repair, maintain, and adjust the escalator that is subject of this Complaint.  WMATA breached said duty by not properly inspecting, cleaning, repairing, maintaining, or adjusting the escalator in question prior to July 17, 2012, particularly said escalator's comb plate which contained three missing teeth.

60. As a direct and proximate result of Defendant WMATA's negligent inspection and maintenance, said escalator's broken comb plate entrapped Plaintiff's foot and impaled Plaintiff's hand on July 17, 2012, causing multiple severe, painful, and permanent injuries.

**COUNT III**
**(Negligent Failure to Repair Escalator)**

**61.** Plaintiff incorporates, by reference, all prior paragraphs, as if the same were repeated herein.

**62.** Plaintiff further alleges that on July 17, 2012, and prior thereto, Defendant WMATA was responsible for maintaining and ensuring the safe use and proper condition of the railroad operations and property, including all vertical transportation equipment, such as WMATA elevators and escalator, and for properly and safely managing, overseeing, and coordinating the travel of passengers entering onto and alighting from said property.

**63.** On July 17, 2012, the escalator that is referred to in this Complaint was operating with comb plates that contained missing teeth, including, but not limited to, the comb-plate that impaled Plaintiff's left hand.  WMATA knew or should have known that the comb-plates were in disrepair, and that this condition created a known and foreseeable danger to WMATA patrons riding on said escalator.

**64.** Furthermore, upon information and belief, on July 17, 2012, the comb teeth of the comb-plate that impaled Plaintiff's left hand was in disrepair and not meshing with the escalator steps, and this condition created a known and foreseeable danger to WMATA patrons riding on said escalator.

**65.** Failure by Defendant WMATA to replace the broken comb plate and repair the comb plate so that the comb teeth meshed with the steps, or remove the escalator in question from service due to various other necessary repairs to ensure rider-safety, and its willful decision to knowingly permit riders to enter and alight said escalator,

directly resulted in the entrapment of Plaintiff's foot and hand under the escalator comb plate.

66. Repairing and/or addressing broken or defective safety equipment that presents a direct and foreseeable safety hazard is not discretionary, and WMATA owed a duty of care, as a common carrier, to conduct such repairs in the interest of public safety.

67. As a direct and proximate result of Defendant WMATA's negligence, Escalator #3 at Smithsonian Metrorail Station was operating on July 17, 2012 with at least one broken comb plate, containing at least three missing comb teeth, and with said remaining comb teeth not properly meshing with the escalator step resulting in unsafe gaps between the comb teeth and steps, which caused multiple severe, painful, and permanent injuries to Plaintiffs.

## COUNT IV
### (Negligent Maintenance of Rider Safety Systems)

68. Plaintiff incorporates, by reference, all prior paragraphs, as if the same were repeated herein.

69. Plaintiff alleges that on July 17, 2012, and prior thereto, WMATA was responsible for inspecting, maintaining, and ensuring the safe use and condition of the escalators and all related equipment at the Smithsonian Metrorail Station, and for properly and safely managing, overseeing and coordinating the safe flow of user traffic upon and along said property.

70. Plaintiff further alleges that Defendant WMATA failed to properly maintain its escalator rider safety system, including, but not limited to, the comb-step impact device, step level device, and emergency stop button, in ways to be further identified through discovery.

71. Upon information and belief, Defendant WMATA escalators at its Smithsonian Metrorail Station are equipped with various rider safety systems, including, but not limited to, the above-referenced comb-step impact device, step level device, and emergency stop button.  If Defendant WMATA properly maintained a functioning escalator safety system, the comb-step impact device would have been activated when a foreign object (such as a toe or a sandal) becomes entrapped between the moving steps and the comb plate, which immediately initiates an automatic shutdown of the escalator and forces the steps to stop rotating.  Additionally, if the step level device had been properly maintained by WMATA, the escalator would have stopped prior to reaching the comb, once the step had dropped below $1/8^{th}$ of an inch.  Finally, if Defendant WMATA properly maintained the emergency stop button, the escalator would have stopped immediately once Plaintiff's father attempted to push it, on the first try.  These devices serve a critical purpose to ensure safety in order to protect WMATA patrons who ride on its escalators.

72. Plaintiff relied on Defendant WMATA to provide safe transportation, which includes safe escalators with proper safeguards to prevent rider injury.

73. When Plaintiff's foot became entrapped under WMATA Escalator #3's broken comb, the comb-step impact device did not actuate despite the presence of a foreign object between the escalator's comb and the moving steps.

74. By failing to properly design, install, inspect, test, and maintain its escalator safety system, and/or other safety systems designed to prevent the continued operation of an escalator despite the presence of a foreign object entrapped therein, Defendant WMATA breach its duty to its patrons, including Plaintiff.  WMATA may have

failed to maintain the escalators in the WMATA Metrorail system, including, but not limited to Escalator #3, and its various rider safety systems in other ways to be identified through discovery.

75. Plaintiffs further allege that as a direct and proximate result of the negligence of Defendant WMATA, Escalator #3 at Smithsonian Metrorail Station continued to operate despite the fact that Plaintiff's foot and hand had become entrapped between the broken comb-plate and the rotating stairs, causing him multiple, severe injuries that ultimately led to his permanent hand disfigurement and life-long disability. Moreover, he experienced, and continues to experience, severe pain and suffering, both physically and emotionally, during and after the July 17, 2012 injury.

## COUNT V
### (Negligent Failure to Warn)

76. Plaintiff incorporates, by reference, all prior paragraphs, as if the same were repeated herein.

77. Plaintiff further alleges at all times relevant herein, Defendant WMATA had a duty to warn passengers of dangerous conditions that it knew or should have known existed.

78. In particular, Defendant WMATA had a duty to warn passengers of the dangerous and unsafe condition of its escalators at its Smithsonian Metrorail Station, since WMATA was well aware that these escalators were a danger to its riders in the event that a foreign object became entrapped between the comb and the step, and WMATA knew that serious harm to passengers was foreseeable, as a result of, inter alia, the propensity of escalators to entrap riders' footwear and feet in the event that a broken comb was not replaced.

**79.** Defendant WMATA negligently breached its duty by, <u>inter alia</u>, failing to warn passengers of the dangerous and unsafe condition of its Smithsonian Metrorail Station Escalator #3, and placing unknowing riders in imminent danger of injury and/or death.

**80.** In addition, Defendant WMATA had a duty to warn passengers of the dangerous and unsafe condition of its escalator rider safety system, as WMATA was on notice of its dysfunctions in prior inspections of Escalator #3, and of the pervasive and frequent incidences of patrons becoming entrapped within the various mechanical parts of an operating escalator.

**81.** Defendant WMATA negligently breached its duty by, <u>inter alia</u>, failing to warn passengers of the dangerous and unsafe condition presented by an escalator without a properly maintained and functioning escalator rider safety system, including, but not limited to, the comb-step impact device, the step level device, and emergency stop button, and placing unknowing passengers in imminent danger of injury and/or death.

**82.** The dangers and risks described in the preceding paragraphs were well known to Defendant WMATA but not known to its passengers.  WMATA knew that its unmaintained escalators and its inactive escalator rider safety system presented the risk of catastrophic injury to its riders, but WMATA provided no warnings to its passengers.

**83.** Instead, Defendant WMATA negligently, carelessly, and recklessly represented its escalator system as safe.

**84.** As a direct and proximate result of the negligence of WMATA in failing to warn its

riders of the dangers of its escalator system, Plaintiffs unknowingly rode on an escalator in disrepair and with an inactive rider safety system, and therefore Plaintiff and his family were riders on an escalator that violently entrapped Plaintiff's foot and hand at the Smithsonian Metrorail Station, which continued to operate and did not automatically shut off, causing serious injury to Plaintiff's hand and causing him to be permanently disfigured and disabled.

## COUNT VI
### (Negligent Infliction of Emotional Distress)

85. Plaintiffs incorporate, by reference, all prior paragraphs, as if the same were repeated herein.

86. As a direct and proximate result of WMATA's negligence in the operations, maintenance, repairs, and inspection of its escalators, and its negligent failure to properly warn the public of the dangerous conditions of its escalators, in deliberate disregard of a high degree of probability that emotional distress would result to any member of the public using its escalator systems, the Plaintiff Teman Chow, his father Plaintiff Chow Wang Chow, and his mother Plaintiff Hau Yee Mak, suffered and continue to suffer severe emotional distress.

87. Plaintiffs were physically at the incident site and all witnessed and experienced the gruesome "degloving" of Plaintiff's hand as it occurred.

88. Plaintiff's parents attempted to rescue their son but were also in fear of their own safety with the moving escalator parts and the worsening of their son's condition.

89. Plaintiff's parents witnessed their son's excruciating pain during the "degloving" incident and the lengthy rescue and extraction operation.  Plaintiffs have suffered severe emotional distress and psychological damage with physical symptoms, due

to Defendant WMATA's negligence and are still undergoing treatment for these injuries.

**COUNT VI**
**(Punitive Damages)**

90. Plaintiffs incorporate, by reference, all prior paragraphs, as if the same were repeated herein.

91. Due to WMATA's outrageous conduct in failing to properly operate, maintain, inspect, and repair Escalator #3 at the Smithsonian Metrorail Station, and in failing to properly warn escalator riders of defects to its escalator safety system that it knew or should have known of, WMATA willfully and recklessly disregarded the safety of its escalator riders, including Plaintiffs.

92. As a direct and proximate result thereto, Plaintiffs unknowingly rode on an escalator in disrepair and with an inactive rider safety system, and therefore Plaintiff and his family were riders on an escalator that violently entrapped Plaintiff's foot and hand at the Smithsonian Metrorail Station, which continued to operate and did not automatically shut off, causing serious injury to Plaintiff's hand and causing him to be permanently disfigured and disabled, and suffering long-term psychological trauma. Additionally, as a direct and proximate result of WMATA's outrageous conduct, Plaintiffs have suffered severe emotional distress and psychological damage with physical symptoms.

WHEREFORE, Plaintiffs Teman Chow, Chong Wang Chow and Hau Yee Mak, demands judgment against Defendant WMATA in the full and just amount of Twenty Million Dollars, ($20,000,000), plus interest and cost.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

OLIVER-ZHANG LAW and
PAULSON & NACE

By:     */s/ Julie Oliver-Zhang*
        Julie Oliver-Zhang, Bar No. 997183
        Julie@oliverzhanglaw.com
        810 New Hampshire Ave., NW
        Washington, DC 20037
        P: 202-643-1110
        F: 202-643-1596
        *Counsel for Plaintiffs*

        */s/ Christopher T. Nace*
        Christopher T. Nace, Bar No. 977865
        ctnace@paulsonandnace.com
        1025 Thomas Jefferson St., NW
        Suite 810
        Washington, DC 20007
        P: 202-463-1999
        F: 202-223-6824
        *Counsel for Plaintiffs*

        */s/ Matthew Nace*
        Matthew Nace, Bar No. 1011968
        man@paulsonandnace.com
        1025 Thomas Jefferson St., NW
        Suite 810
        Washington, DC 20007
        P: 202-463-1999
        F: 202-223-6824
        *Counsel for Plaintiffs*