# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **TEMAN CHOW,** *et al.*, |
| Plaintiffs, |
| v. |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**, |
| Defendant. |

Case No. 1:19-cv-01354 (TNM)

## MEMORANDUM AND ORDER

A young tourist suffered every commuter's nightmare when his foot and then hand were mangled in an escalator at the Smithsonian Metrorail Station in Washington, D.C. Teman Chow and his parents sued the Washington Metropolitan Area Transit Authority ("WMATA"), which owns and operates the station, alleging various negligence claims. WMATA has moved to dismiss the Chows' Complaint in part, arguing that several of their claims are time barred or barred by sovereign immunity. For the reasons below, the Court will grant in part and deny in part WMATA's motion.

## I.

According to the Complaint, in the summer of 2012, then-14-year-old Teman Chow and his family traveled from their home in Canada to vacation in Washington, D.C. Compl. ¶ 12, ECF No. 1. After touring the National Mall one evening, the Chows boarded an escalator at the Smithsonian Metrorail Station. *Id.* ¶ 13. At the bottom of the escalator, Teman's sandal and foot got caught between the escalator stair and the bottom comb plate. *Id.* ¶ 14. The escalator continued to run even though his foot was stuck, causing him severe pain. *Id.* ¶ 16.

Teman instinctively reached down to try to free his foot. *Id.* ¶ 17. But things only got worse. As Teman tried to rescue his foot, the teeth of the comb plate impaled his hand, which also became trapped between the escalator's still-rotating stairs and the comb plate. *Id.* ¶ 18. Even with his foot and hand lodged between the escalator stairs and the comb plate, the escalator continued to function at full power, grinding away at Teman's foot and hand. *Id.* ¶ 19. No automatic safety shutoff mechanism ever engaged. *Id.* ¶¶ 16, 19.

Meanwhile, Teman's parents watched in horror. *Id.* ¶ 20. His father tried to activate the emergency stop button, but the escalator did not stop. *Id.* Eventually, another WMATA customer alerted the station manager who stopped the escalator, while other customers called 9-1-1. *Id.* ¶¶ 21–22.

Emergency medical technicians arrived, but they were unable to remove Teman's hand from the comb plate. *Id.* ¶ 23. They ultimately removed the entire comb plate, still clenched to Teman's hand. *Id.* ¶¶ 23–24. They rushed Teman to National Children's Hospital, and doctors treated him for a severe foot injury and multiple severe injuries to his hand, which the doctors termed a "de-gloving." *Id.* ¶¶ 25–26.

The Chows allege that Teman's injuries stem from WMATA's negligence in its operation and maintenance of the escalator. *Id.* ¶ 27. First, they assert that the escalator was in disrepair. *Id.* ¶ 15. The bottom comb plate, they claim, was missing at least three teeth, and those missing teeth allowed his sandal and foot to become trapped. *See id.* ¶¶ 61–67. And, according to them, the escalator's safety systems were not functioning properly. *See id.* ¶ 47b. A comb-step impact device should cut power to the escalator if an object becomes trapped between the comb plate and the rotating steps, and an emergency stop button should stop the escalator when pushed. *See*

*id.* ¶ 35.  But the Chows allege that neither of these systems activated properly during the incident.  *Id.* ¶¶ 20, 36.

According to them, WMATA knew that the escalator's safety systems were malfunctioning.  *See id.* ¶ 39.  Indeed, they claim that just a day before the incident, WMATA inspected the escalator and determined that the "comb plate, steps, and up-thrust safety devices" were not in good condition.  *Id.* ¶ 38.  And an inspector recommended that WMATA replace the broken comb plate.  *Id.*  Even so, WMATA allowed customers to ride the escalator, unwarned of the danger lurking beneath their feet.  The Chows allege negligence claims, including negligent maintenance, failure to warn, and negligent infliction of emotional distress.  *Id.* ¶¶ 43–89.  They also seek punitive damages.  *Id.* ¶¶ 90–92.

WMATA has moved to dismiss three of the Chows' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Def.'s Mot to Dismiss, ECF No. 13.  First, it argues that Teman's parents' claim for negligent infliction of emotional distress is time barred.  Def.'s Mem. in Supp. of Mot to Dismiss ("Def.'s Mem.") at 4–5, ECF No. 13-1.[1]  The Chows now concede as much.  Pls.' Mem. in Opp'n to Mot. to Dismiss ("Pls.' Opp'n") at 3, ECF No. 14-1.  Next, WMATA argues that sovereign immunity bars the claims for negligent training and punitive damages.  *See* Def.'s Mem. at 7–11, 16–18.  Teman agrees that his punitive damages claim cannot proceed and affirmatively states that he has not brought a claim for negligent training. Pls.' Opp'n at 3, 13.  The Court will therefore grant WMATA's motion as to these claims.

Finally, according to WMATA, sovereign immunity bars Teman's claim for failure to warn.  Def.'s Mem. at 11–16.  But for the reasons below, the Court will deny WMATA's Motion to Dismiss that claim and grant Teman jurisdictional discovery.

---

[1] All citations are to the page numbers generated by the Court's CM/ECF system.

II.

"[S]overeign immunity claims are jurisdictional." *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997). Thus, they are properly evaluated under Rule 12(b)(1). *See Loughlin v. United States*, 393 F.3d 155, 162–63 (D.C. Cir. 2004); *see also Whiteru v. WMATA*, 258 F. Supp. 3d 175, 181–82 (D.D.C. 2017).

Because federal courts are courts of limited jurisdiction, they "presume[] that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). To survive a Rule 12(b)(1) motion, a plaintiff must establish that the Court has jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "When ruling on a Rule 12(b)(1) motion, the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (cleaned up). In this context, courts may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (cleaned up). If the Court finds that it lacks jurisdiction, it must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

III.

Congress created WMATA by approving the Washington Metro Transit Authority Compact signed by Maryland, Virginia, and the District of Columbia. *See* Pub. L. No. 89-774, 80 Stat. 1324 (1996). "In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities." *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997). WMATA is therefore not "liable for any torts occurring

in the performance of a governmental function," although the Compact waives sovereign immunity for torts "committed in the course of any proprietary function." D.C. Code § 1-2431(80).

The D.C. Circuit has "developed two alternative tests for identifying 'governmental' functions under the WMATA compact." *Burkhart*, 112 F.3d at 1216 (citing *Dant v. District of Columbia*, 829 F.2d 69 (D.C. Cir. 1987)). Only one test is relevant here: the discretionary function test.[2] That test asks whether an activity is "discretionary" or "ministerial," a dichotomy employed by the Federal Tort Claims Act ("FTCA"). *Id.* "Only those activities considered 'discretionary' are shielded by sovereign immunity." *Id.*

To determine whether the discretionary function exemption applies to WMATA's decision not to post warnings at the escalator, the Court first must determine whether any "'statute, regulation, or policy specifically prescribes a course of action'" for WMATA to follow. *See Gaubert*, 499 U.S. 315, 322–23 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If so, then WMATA has "no rightful option but to adhere to the directive." *Id.* Because no discretion is involved, the exemption does not apply. *Abdulwali v. WMATA*, 315 F.3d 302, 304 (D.C. Cir. 2003).

"If no course of action is prescribed, [the Court] then determine[s] whether the exercise of discretion is 'grounded in social, economic, or political goals.'" *Beebe*, 129 F.3d at 1287 (quoting *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995)). "If so grounded, the activity is 'governmental,' thus falling within section 80's retention of sovereign immunity." *Id.* Admittedly, "[a]pplication of the discretionary function test . . . has generated a morass of

---

[2] The first alternative asks whether an activity is a "quintessential[] government" function, like law enforcement. *Burkhart*, 112 F.3d at 1216 (citing *Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987)). If it is, the activity falls under WMATA's sovereign immunity. *Id.* But neither party argues that the quintessential government function test applies here.

5

conflicting cases." *Abdulwali*, 315 F.3d at 305.

For example, in *Abdulwali*, the D.C. Circuit held that sovereign immunity bars review of the design of warning signs on Metro cars. 315 F.3d at 305. In it, a young passenger died when he tried to pass between two cars while the Metro was moving. *Id.* at 302–03. The Metro car had only a sign above the bulkhead door that read "No Passage—Except in Emergency," and the young boy's mother sued alleging that WMATA's signage was inadequate. *Id.*

The D.C. Circuit rejected the plaintiff's argument, noting that WMATA has "broad discretion to design all transit facilities and to enter into contracts for their operation and furnishment." *Id.* at 304–05 (citing D.C. Code Ann. §§ 9-1107.01(12)(f), 13(a)). It reasoned that reviewing the adequacy and design of warning signs "would foster judicial second-guessing of political, social, and economic decisions that [WMATA's] immunity was designed to prevent." *Id.* at 305 (cleaned up). Thus, the court held that "[d]esigning the bulkhead signs, or any feature of the Metro system, required judgments that were by their nature susceptible to a policy analysis," and "one constant in [the D.C. Circuit's] precedents is that [WMATA] makes discretionary choices when establishing plans, specifications or schedules regarding the Metro system." *Id.* (cleaned up).

But in *Cope v. Scott*, the D.C. Circuit held that the National Park Service's decision to post no warning signs at a dangerous curve on a slippery road was not discretionary. 45 F.3d at 451–52. The court rejected the government's argument that its decisions implicated engineering, aesthetic, and fiscal concerns, and were thus fraught with public policy considerations. *Id.* at 451–52. Because the Park Service had "chosen to manage the road in a manner more amenable to commuting through nature than communing with it" and already had several signs along the stretch including the dangerous curve, the court found that the discretionary function exception

6

was inapplicable to the decisions not to post warning signs. *Id.*

This case's path through the discretionary function test "morass" is currently unclear. While WMATA correctly notes that Teman has not alleged that it "failed to follow any specific policy, regulation or code provision requiring specific public safety advisories," dismissal would be premature. *See, e.g.*, *Ignatiev v. United States*, 238 F.3d 464, 466–67 (D.C. Cir. 2001).

In the FTCA context, "[n]ormally to survive a motion to dismiss in [the discretionary function] area, a complaint must either allege facts demonstrating that the challenged actions are not grounded in public policy considerations or base its claims on government agents' mandatory obligations." *Id.* at 466. "But if [a plaintiff] allege[s] that such a mandatory policy actually existed—without knowing whether it did or not—[he] would risk violating Rule 11." *Id.* at 467. To avoid this quandary, the D.C. Circuit has "previously required that plaintiffs be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion." *Id.*

In *Ignatiev*, plaintiffs brought an FTCA action based on conduct by the Secret Service, and the district court dismissed the claim under the discretionary function exception for failure to identify any mandatory duties the agency allegedly violated. 238 F.3d at 467. The D.C. Circuit reversed and permitted discovery on whether the Secret Service maintained internal guidelines that could serve as an actionable source of mandatory obligations. *Id.*

As in *Ignatiev*, Teman contends that discovery is necessary "so as to determine the existence of any such mandatory internal policy and procedure that [WMATA] did not abide by." Pls.' Opp'n at 4. Indeed, he "simply seek[s] to engage in relevant discovery regarding [his] . . . failure to warn claim, so as to investigate the existence of such mandatory, internal policies and procedures regarding warnings to patrons on escalators with known safety issues."

7

*Id.* at 12. Other courts in this Circuit have approved similar requests for jurisdictional discovery. *See, e.g.*, *Loughlin*, 393 F.3d at 166–68; *Wesberry v. United States*, 205 F. Supp. 3d 120, 135–36 (D.D.C. 2016) (granting discovery to determine the applicability of the discretionary function exception); *Sledge v. United States*, 723 F. Supp. 2d 87, 94–98 (D.D.C. 2010) (same).

"The district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Phoenix Consulting Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (cleaned up). Teman seeks leave to conduct discovery on whether WMATA has mandatory, internal policies and procedures about warnings to patrons on escalators with known safety issues. Pls.' Opp'n at 12. The Court will follow the Circuit's instruction in *Loughlin* that plaintiffs must be afforded this opportunity when the facts are necessary to establish jurisdiction. 393 F.3d at 167.[3] Because WMATA's effort to dismiss Teman's failure to warn claim is premature, the Court will deny the motion for now.

## IV.

For the foregoing reasons, the Defendant's Partial Motion to Dismiss is granted in part and denied in part. It is hereby

**ORDERED** Plaintiffs Chong Wong Chow and Hua Yee Mak's claim for negligent infliction of emotional distressed is dismissed and they are dismissed as Plaintiffs. It is further

**ORDERED** that Teman's request for punitive damages is dismissed. It is further

**ORDERED** that the Defendant's motion to dismiss Teman's failure to warn claim is denied without prejudice. It is further

---

[3] The Court recognizes that "[i]n order to avoid burdening a sovereign that proves to be immune from suit . . . jurisdictional discovery should be carefully controlled and limited." *Phoenix Consulting Inc.*, 216 F.3d at 40. But "[s]ince internal guidelines can be an actionable source of a mandatory obligation under the FTCA . . . an agency cannot shield itself from liability simply by denying the allegations of a complaint." *Ignatiev*, 238 F.3d at 467 (cleaned up).

**ORDERED** that the Plaintiff's Motion for Leave to File a Surreply is denied as moot.

**SO ORDERED.**

Dated: July 23, 2019                                    TREVOR N. McFADDEN, U.S.D.J.